UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

  -v-                                                        No.  14CR838-LTS

RAYNALDO MELENDEZ,

               Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Defendant Raynaldo Melendez ("Melendez" or "Defendant") is charged in the above captioned indictment with one count of violating 18 U.S.C. § 922(g)(1), which prohibits the possession of firearms by individuals who have previously been convicted of felonies.  Defendant has moved to suppress evidence found during a search conducted pursuant to a warrant executed on October 21, 2014, as well as statements made to police officers following his arrest.  The Court has carefully considered the parties' submissions and, for the reasons stated below, denies Defendant's motion in its entirety.

BACKGROUND[1]

        On October 20, 2014, Detective David Montanez ("Montanez") appeared before the

---

[1]  The facts recited herein are drawn from the unrebutted facts in the Complaint  (Docket Entry No. 1 ("Complaint")); the sworn statements in Detective David Montanez's affidavit in support of the search warrant (Docket Entry No. 14, Ex. B ("Montanez Warrant Aff." )); the sworn statements made by both Detective Montanez and the Confidential Informant ("CI") in their colloquy with Criminal Court Judge Linda Poust-Lopez in support of the search warrant (Docket Entry No. 14, Ex. A ("Tr.")); Detective Montanez's declaration in opposition to the suppression motion (Docket Entry No. 14, Ex. C ("Montanez Motion Aff.")); Defendant's affidavit in support of the suppression motion (Docket Entry No. 13 ("Melendez Aff.")); and the search warrant itself (Docket Entry No. 13, Ex. B ("Warrant")).  These facts were stipulated on the record at the May 12, 2015, pretrial conference in this matter.

Honorable Linda Poust-Lopez, of the Criminal Court of the State of New York for Bronx County, in connection with an application for a search warrant for 165 Saint Ann's Avenue, Apt. 8A, in the Bronx. (See generally Tr.; Montanez Motion Aff.)  In support of the application, Montanez submitted an affidavit, sworn to on October 20, 2014, indicating that he had been informed by a CI that "on October 18, 2014 at approximately 3:00 p.m. . . . [the] CI observed an individual known to him/her as Reynaldo [sic] 'Ray' Melendez" at the subject premises," that the CI "observed a black wood-handled revolver on a nightstand" in a bedroom at the subject premises, and that the CI "has known Reynaldo [sic] 'Ray' Melendez for approximately one year and has known [the subject premises] to be his residence for at least one month." (See Montanez Warrant Aff. at pp. 3-4 ¶¶ 1, 4, 5.)  The affidavit further indicated that the CI had informed Montanez that "on October 18, 2014 at approximately 11:30 p.m. . . . [the] CI observed the individual known to him/her as Reynaldo [sic] 'Ray' Melendez place said firearm in his waistband and take it outside." (Id. ¶ 3.)  The affidavit also indicated Detective Montanez's belief that the firearm was unlawfully possessed. (See id. at p. 2 ¶ 3.)

Prior to issuing the warrant, Judge Poust-Lopez questioned both Detective Montanez and the CI under oath, to ensure that probable cause for issuance of the warrant existed. (See generally Tr.)  During this colloquy, the CI told Judge Poust-Lopez that s/he had seen the unsecured firearm in Melendez's apartment as recently as the previous day. (Id. 5:6-10.) Furthermore, in support of his/her assertion that the gun was real and not a toy, the CI told Judge Poust-Lopez that Melendez had told him/her that "he need[ed] protection, he wanted to kill somebody," and that Melendez had admitted to him/her that he had previously shot someone with the gun. (Id. 7:7-8, 15-20.)  After excusing the CI, Judge Poust-Lopez questioned Detective Montanez about the need for a "no knock" warrant. (Id. 9:6-15.)  Detective Montanez explained

that the NYPD had received "information that [Melendez] shot somebody in the past," and that the "CI's explained to us that [Melendez] wants to shoot somebody else so we want to get the gun taken from him before it happens." (See Tr. 9:8-15.) Based on this record, Judge Poust-Lopez determined that there was probable cause to issue the search warrant, finding that "the detective and the CI are credible and the CI's information seem[s] to be credibly based on personal knowledge and also there seems to be circumstances that would justify for both public safety and the safety of the officers to execute the warrant as a no knock." (Id. 9:25-10:6.) Detective Montanez then ran several standard checks that are generally run prior to the execution of a search warrant. (See Montanez Motion Aff. ¶ 4.) These included checks of the Automated License/Permit System, which revealed that Melendez did not have a valid firearm license or permit (id. ¶ 4(a)), and a check of Melendez' criminal history, which indicated that he had previously been convicted of a felony. (Id. ¶ 4(b) and Exs. 1-2.)

On October 21, 2014, Detective Montanez, along with other officers of the NYPD, executed the search warrant at 165 Saint Ann's Avenue, Apt. 8A, in the Bronx.[2] (See Montanez Motion Aff. ¶ 3.) Upon searching the premises and the surrounding area, the officers recovered a firearm, which officers had observed being thrown out of Melendez's bedroom window by a dark-skinned male, as well as ammunition. (See id; Complaint ¶ 3(b),(c).) Melendez was thereafter placed under arrest and transported to the police precinct for questioning, along with the other occupants of his apartment: his girlfriend, his roommate, and his roommate's girlfriend. (See Melendez Aff. ¶ 7.) Melendez's father, who was also present, was taken to the hospital. (Id.) At the precinct, Melendez was read his Miranda rights, which he waived in writing. (See Complaint ¶

---

[2]     At no time before or after the NYPD officers entered the premises did anyone provide consent for the police to perform a search. (Melendez Aff. ¶ 9.)

4.)  He then admitted that he had been present in his bedroom at the time of the execution of the search warrant, that he had possessed the firearm in the bedroom and that he had thrown the firearm out of the bedroom window when the NYPD officers announced their presence .  (See Complaint ¶ 4.)  Melendez further admitted that the ammunition recovered from the bedroom belonged to him.  (Id.)  Throughout the course of this questioning, Melendez was repeatedly told that all of the occupants of his apartment would be arrested and charged with illegal possession of a firearm if he did not admit that the firearm belonged to him.  (See Melendez Aff ¶ 8.)  Melendez asserts that he agreed to speak with the police out of fear of what might happen to his family and friends.  (Id.)

## DISCUSSION

Legal Standards

The Fourth Amendment to the United States Constitution provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The Supreme Court has held that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity."  Kentucky v. King, 131 S. Ct. 1849, 1856 (2011).  In the context of a warrant application, "probable cause is a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Howe, 545 F. App'x 64, 66 (2d Cir.

2013) (internal quotation marks and citations omitted).  Conclusory legal allegations are not sufficient to establish the existence of probable cause, as the "totality of the circumstances must present the [issuing] magistrate with sufficient information to allow that official to make the necessary [probable cause] determinations; his action cannot be a mere ratification of the bare conclusions of others."  United States v. Clark, 638 F.3d 89, 97 (2d Cir. 2011).  To that end, the independent assessment of the issuing judge is key to the validity of a warrant, and the Supreme Court has noted that "the usual inferences which reasonable men draw from evidence . . . [must] be drawn from a neutral and detached magistrate" in order to satisfy constitutional requirements.  Johnson v. United States, 333 U.S. 10, 14 (1984).  The Fourth Amendment requires "[o]nly the probability, and not a prima facie showing, of criminal activity" to meet the probable cause standard.  See Illinois v. Gates, 462 U.S. 213, 239 (1983) (internal quotation marks and citation omitted).

In determining whether probable cause for a warrant exists, a court must "resolve any doubt about the existence of probable cause in favor of upholding the warrant," United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998), and must accord "considerable deference to the probable cause determination of the issuing magistrate."  Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007).  The Second Circuit has noted that, under this deferential standard, an individual "who argues that a warrant was issued on less than probable cause faces a heavy burden."  Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991).  "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review . . . so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth amendment requires no more."  Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

Validity of the Search Warrant

Melendez argues that the affidavit provided by Detective Montanez in support of the search warrant failed to provide a sufficient factual basis for Judge Poust-Lopez's probable cause determination.  (See Defendant Melendez's Memorandum of Law in Support of Motion to Suppress ("Melendez Memo") at p.3.)  Melendez chiefly asserts that "[m]ere possession of a firearm is not necessarily an unlawful act," and that "[t]here is no information in [Montanez's] affidavit . . . with respect to the lawfulness of the firearm other than the detective's conclusory statement that the firearm was unlawfully possessed."  (See id. at p. 3.)  This, Melendez claims, negates the factual basis for Judge Poust-Lopez's finding of probable cause, rendering the warrant, and the subsequent search of Melendez's apartment, invalid.

In response, the Government argues that, under New York law, possessing a firearm without a valid license is a presumptively criminal act, and that possession of a license is an affirmative defense on which the licensee bears the burden of proof.  The Government further proffers that licenses that are issued require that specific storage and safety protocols be followed, and that concealed carry permits are issued only for specific purposes and are rare.  (See Government's Opposition to Defendant's Motion to Suppress Evidence ("Gov't Memo") at pp. 9-11; see also United States v. Sanchez-Villar, 99 F. App'x 256, 258 (2d Cir. 2004) ("Under New York law, it is a crime to possess a firearm") (abrogated on other grounds).)  The Government therefore asserts that the CI's statements that Melendez possessed the firearm in the apartment, and that it was left unsecured "on the night stand" and "on top of the bed," provided a sufficient factual basis for Judge Poust-Lopez's probable cause determination that the firearm was unlawfully possessed.  (See Tr. 6:3-5.)  The Government also highlights the statement in Detective Montanez's affidavit that the CI observed Melendez place the firearm in his waistband and take it

outside, which would be presumptively unlawful activity in the absence of a concealed carry license.  (See Gov't Memo at p. 13; Montanez Warrant Aff. at p. 3 ¶ 3.)  Finally, the Government points to the CI's sworn statement to Judge Poust-Lopez that Melendez had admitted that "he wanted to kill somebody."  (Tr. 7:7-8.)  Taken together, the Government offers, these facts provided a sufficient basis for Judge Poust-Lopez's determination that probable cause for the search warrant existed.

Melendez relies primarily on this Court's decision in United States v. Rutherford, 14CR417-LTS, 2014 WL 6772163 (S.D.N.Y. Dec. 2, 2014), in support of his position.  In Rutherford, this Court held invalid a warrant that had issued on the basis of a police officer's conclusory statement that "unlawfully possessed" weapons were likely to be found within a particular apartment.  See Rutherford, 2014 WL 6772163, at *4.  This Court noted that "the CI's testimony sheds no light on whether the possession of the weapons was illegal," that the issuing judge's determination of probable cause was "a mere ratification of the bare conclusions proffered" by the police officer, and that "[t]he warrant and application contained no facts that the judge could have interpreted in reaching a reasoned conclusion that the guns alleged to be in the apartment were unlawfully possessed."  Id., at *4-5.  This Court further explained that, because "the warrant and application [were], on their face, so lacking in indicia of probable cause . . . as to render reliance upon them unreasonable," the officers could not have relied upon the warrant in good faith, which negated any good faith exception to the exclusionary rule.  This Court ultimately found that suppression of all of the evidence obtained as a result of the search pursuant to the invalid warrant was proper.  See id., at *5-7.

Defendant's reliance on Rutherford is misplaced.  Unlike in Rutherford, where both the warrant and the supporting application were found to be "lacking in indicia of probable cause"

of criminal activity, Judge Poust-Lopez was provided with sufficient information to find that probable cause to issue the search warrant existed.  As the Government points out, "the evidence before [Judge Poust-Lopez] established not just that Melendez was armed, but that he was armed <u>and</u> <u>dangerous</u>."  (<u>See</u> Government's Surreply to Defendant's Motion to Suppress Evidence ("Gov't Surreply"), at p. 1 (emphasis in original).)  Judge Poust-Lopez could not reasonably have been left with the impression that Melendez possessed the gun in a lawful fashion and merely for the asserted purpose of "self-protection."  Indeed, she was presented with information that: Melendez had handled the gun in a noncompliant manner (Tr 6:3-5, 7:6-7); that he had previously shot someone (<u>id,</u> 7:17-21); and that he had expressed an intent to use the gun in an unlawful manner, to wit: "to kill somebody."  (<u>Id.</u> 7:7-8.)  This information was provided to Judge Poust-Lopez in the sworn affidavit of Detective Montanez (<u>see</u> Montanez Warrant Aff.), and she had the opportunity to test the CI's credibility during the colloquy in court.  (<u>See</u> Tr. 9:25-10:6.)  Taken together, this credible evidence established a "fair probability" that Melendez possessed the firearm in violation of the law, and that he intended to use it for an illegal purpose, which sufficiently established a probable cause basis for the warrant.  <u>See</u> <u>Salameh</u>, 152 F.3d at 113.  Based on the stipulated facts, the Court finds that Judge Poust-Lopez acted as a "neutral and detached magistrate," <u>Johnson</u>, 333 U.S. at 14, and that she drew reasonable inferences from the information before her.  Therefore, her finding of probable cause is entitled to "considerable deference."  <u>Walczyk</u>, 496 F.3d at 157.  Because the Court finds that probable cause existed for issuance of the warrant, it need not determine the applicability of the exclusionary rule's good faith exception.  The Court therefore denies Melendez's motion to suppress the items obtained from his home as a result of the search performed pursuant to the October 20, 2014, warrant.

Melendez's Post-Arrest Statements

Melendez also seeks the suppression of statements that he made to the police subsequent to his arrest. Melendez offers two bases for this argument. First, he claims that, because the statements were made subsequent to an arrest stemming from an illegal search, those statements should be excluded as the "fruit of the poisonous tree." See, e.g., Wong Sun v. United States, 371 U.S. 471 (1963). However, because the Court has already determined that the search of Melendez's apartment was valid, this argument is unavailing.

Melendez further claims that the questioning officers' repeated threats to arrest everyone present in the apartment at the time of the search, including Melendez's elderly father, were so improperly coercive as to undermine the voluntariness of his statements. (See Melendez Memo at pp. 4-5.) The Court finds that the officers' conduct in this situation was entirely permissible. The Government correctly notes that "a threat to arrest a suspect's family member . . . does not render a confession involuntary if the police have probable cause to arrest the family member and thus could lawfully carry out the threat." United States v. Ortiz, 943 F. Supp. 2d 447, 456 (S.D.N.Y. 2013); see also United States v. Munoz, 987 F. Supp. 2d 438, 447 (S.D.N.Y. 2013) ("Courts in this district have held that a police threat to arrest a suspect's loved ones undermines the voluntariness of consent [in situations] where the police lack probable cause to make such arrests."). Here, the officers had evidence that the firearm was unsecured in Melendez's apartment, and that it was left in plain view, where others could access it. (Tr. 6:3-5.)

Even if, as Melendez argues, "every fact the [G]overnment had in its possession pointed to the conclusion that the gun belonged" to Melendez (Defendant Melendez's Reply Memorandum of Law in Support of Motion to Suppress at p. 7) (emphasis added), the police officers had probable cause to believe that the other occupants of the apartment were in

constructive possession of the firearm.  See e.g., United States v. Memoli, 333 F. Supp. 2d 233, 238 n.3 (S.D.N.Y. 2008) (finding probable cause to arrest a family member who had constructive possession of a firearm); United States v. Morales, 851 F. Supp. 112, 116 n.6 ("The Search Warrant affidavit alleges that [defendant] lived in the apartment at the time of the search; therefore, [defendant's] argument must fail because one is in constructive possession of those items in one's apartment.").  The questioning officers therefore had probable cause to arrest any occupant of Melendez's apartment for unlawfully possessing the firearm and, as a result, any threats to Melendez that his girlfriend, his roommate, his roommate's girlfriend or his father would be arrested were not so unduly coercive as to render his statements involuntary.  See Memoli, 333 F. Supp. 2d at 237 ("while [using defendants' attachment to others] might have been unchivalrous on [the officers'] part, it was in no way unlawful or 'coercive' in the sense here relevant.").  The Court therefore rejects Melendez's argument that his post-arrest statements should be suppressed.

## CONCLUSION

For the reasons stated herein, Defendant's motion to suppress the items obtained as a result of the search of his apartment and his post-arrest statements is denied in its entirety.

The next pretrial conference in this matter will be held on **Wednesday, July 8, 2015, at 12:45 p.m.**

This Memorandum Opinion and Order resolves Docket Entry Number 24.

SO ORDERED.

Dated: New York, New York
          June 17, 2015

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge